Withers J.
delivered the opinion of the Court.
In the contemplation of this Court, the verdict of the jury in this case, regard being had to the charge of the presiding Judge, has established the following facts, to wit:
1. That the defendant knew the negroes in question had been purchased, or derived by Pettiway from Picket, while under the lien of a fieri facias, or that he was acquainted with the defect of title in Pettiway.
2. That he either directly affirmed what was false, or that he threw the plaintiff off his guard by a wilful and artful supj r asion ofthe truth. And by way of giving practical efficiency to the enquiries of the jury upon these last particulars, they were pointed to the question, whether the defendant directed the investigation about an encumbrance on the negroes to Wilmington, North Carolina, where he knew that no satisfactory information could be obtained, when he should have directed it to another point, where the truth could have been ascertained; and this enquiry was accompanied by instruction (very liberal towards the defendant) that a Broker was not bound to disclose secrets communicated by his principal in relation to property entrusted to him for sale; that if he acted at all in such cases as agent, he should either say nothing or speak the truth; and that he should not put the party with whom he was negotiating on a false scent. This verdict, under such instructions, cannot be taken to have established less against the defendant, than fraud and deceit to the damage of the plaintiff.
Now, according to the leading case of Pasley v. Freeman, (3 Term R., 51,) these elements, combining, constitute a sufficient basis for an action on the case, even though (as in that case) the defendant may not appear to have been moved by a pecuniary interest to himself, or by collusion with one who *223 was to gain an advantage. It is not too much to say, that both these latter circumstances may well have been perceived and affirmed by the jury against the present defendant; and according to the view of Grose J., (who differed from the Court in Pasley v. Freeman,) would render the present case stronger for the plaintiff than he conceived that to be.
The soundness of the law adjudged in Pasley v. Freeman, and of the legal propositions laid down in the case now before us by the Judge on the circuit, is not disputed by the argument submitted to this Court; but while it is urged that the proper tendency of Courts should be to meet the leading case referred to with a spirit of restriction, instead of the contrary, it is contended that the case under consideration is not, stricti juris, embraced within the rule fairly to be deduced. This idea is founded upon the allegation made in the first ground of appeal, that there was no proof of any “affirmation or representation having been made by the defendant to the plaintiff concerning the title to the negroes.”
Though wre do not mean to affirm that a Broker or Agent is bound to become voluntary active in communicating to a person with whom he deeds, the information which springs from a confidential relation between himself and his principal, nor upon the present occasion, to lay down any broad proposition on this point in the affirmative or negative, yet such inertness was not the substratum of the plaintiff’s case. The defendant’s activity in some degree or other was a matter submitted to the jury; Now the inquiry arises, is that fraud which is the ground work of this action, which operates an injury to the plaintiff, and which he is bound to establish; that fraud by which he is seduced in whole or in part into a transaction that injures him, to be predicated only of an affirmation or representation, in words known to be false by the party making it. We think not; but that on the contrary, such a fraud as sustains the action in question may grow out of deeds as well as words. May not one make a false and fraudulent affirmation or representation by acts as well as by language? Suppose Gadsden had in his proper person proceeded to Wilmington, to procure delusive evidence as to encumbrances on the negroes sold to *224 the plaintiff, knowing what the jui’y have affirmed he did know; and had brought back, and caused to be exhibited to the plaintiff such deceptive certificates as Pettiway produced. Can the mind hesitate to perceive that in this there would be a fraudulent representation, calculated and intended to deceive and injure? What would be the object of such a proceeding? Manifestly to represent to the mind of Chisolm, and thus produce an erroneous belief in him, that due and diligent search had been made in the proper quarter, and such diligence established the title to the negroes to be really sound. Now, if Pettiwaj did this very thing by the procurement or advice of Gadsden, where is the difference? This very matter, however, was submitted to the jury, and their answer by their verdict concludes it. so far as concerns this Court.
Adopting the language of this report, the question submitted to the jury in this connexion is stated to be, “did he send the plaintiff (or Pettiway for him) to inquire about the incumbrance upon the negroes in North Carolina, where he knew that no proper information could be obtained, when he should have directed him to Georgetown, where the truth could have been learned? Assuredly, when Pettiway signed the bill of sale, he made a false and fraudulent representation; but if Gadsden wrote it, (as it appears he did wherein writing was required.) and attached these deceptive certificates to it, it is literally true that he aided and abetted in making that false and fraudulent representation which misled and injured the plaintiff. The fraud being the gist of the action, it cannot be material whether the means or pretence used, be language known to be false, or conduct, when that is most efficacious for the end which is calculated and intended to deceive and mislead, and which does mislead. The impression relied upon here may be owing in a great degree to the circumstance, that in most of the cases reported, which bear upon the cases before us, false and fraudulent language, oral or written, was the means or pretence resorted to, because it was necessary to the object; but cases are not wanting, holding, on the authority of the leading case already referred to, that any fraudulent conduct injuring another is actionable without regard to the novelty of the case. Many *225 such are cited in the Commentary made in the case of Pasley v. Freeman, by Smith, in his “Leading Cases,” American edition. We must not forget the maxim, that haeret in litera, haeret in cortice.
As to the second ground of appeal, alleging that the scienter was not proved, we can only say, that the jury have affirmed the contrary under proper instruction on this very point, that it was peculiarly their function to determine that matter, and that touching that question we can by no means discover such want of evidence as to produce dissatisfaction with their verdict.
The motion is dismissed.